ALEX G. TSE (CABN 152348)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

SCOTT D. JOINER (CABN 223313)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    scott.joiner@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) NO. CR 16-00538 JSW |
|---|---|
| Plaintiff, | ) **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | ) |
| DELAY GRAHAM, | ) Sentencing Date: October 3, 2017<br>) Time: 1:00 p.m.<br>) Judge: Hon. Jeffrey S. White |
| Defendant. | ) |

## I. INTRODUCTION

The defendant, Delay Graham, stands before the Court to be sentenced following his guilty plea to Count One of the Indictment. Given the defendant's persistent and escalating criminal history, and his demonstrated danger to the community, the government respectfully requests that the Court impose a custodial sentence 84 months in prison to be followed by three years of supervised release, an expanded search condition, and a mandatory special assessment of $100.

## II. OFFENSE CONDUCT (PSR ¶¶ 5-10)

On December 6, 2016, police officers with the Oakland Police Department (OPD) were conducting undercover surveillance on Delay Graham, a known Ghost Town member with a warrant for his arrest for a parole violation. Based on information received from confidential sources, Graham was a suspect in the November 28, 2016, murder of Dymetrie Shaw. The Shaw murder appeared to be part of a series of murders and shootings related to a Ghost Town feud with an individual named Tresliyan Redd. On November 25, 2016, Alwyn Redd was murdered in a vehicle located in the 600 block of 23rd St. Information from numerous witnesses and sources indicated that the intended target of the shooting was Tresliyan Redd, who was on scene but able to flee. On November 28, 2016, Deante Miller and Roderick Godfrey were murdered in front of 725 39th St. Both Miller and Godfrey were Ghost Town gang members/associates. Information received by OPD further suggested that Tresliyan Redd committed the shooting in order to retaliate for the homicide of his family member, Alwyn. Later on November 28, 2016, Dymetrie Shaw was murdered in the 600 block of 32nd St – next to the Redd family house at 663 32nd St. Based on this information, OPD obtained a ping order search warrant for a number associated with Graham's cell phone. This led to the surveillance operation on December 6, 2016.

At approximately 4:30 PM, plain clothes officer D. Bruce advised the team that he had seen Graham park in front of 3929 Piedmont Ave. (Oakland's Silver & Gold) in a silver Nissan Sentra (7FGF128). Graham got out of the driver's seat of the vehicle, and woman (later identified as Nary Sun) got out of the passenger seat of the vehicle. Graham and Sun both walked inside of 3929 Piedmont. About ten minutes later, Graham and Sun walked back outside. Officer. Bruce directed Officer Brothers to arrest Graham. As Brothers approached Graham from behind, Graham was walking towards the driver's side door of the Nissan Sentra. Sun was walking towards the passenger door of the vehicle.

1  Based on Brothers' observations, it appeared that Graham was attempting to return to the driver's seat of
2  the Nissan Sentra where plain-clothes officers had originally seen him.

3   When Graham saw the officer approaching, he ran southbound from the 3900 block of Piedmont
4  Ave. Graham stumbled and fell at the corner of Rio Vista St. and Piedmont Ave. as Brothers was
5  chasing him. Officer Chacon arrived on scene and together with Brothers they took Graham into
6  custody without incident. Chacon conducted a search incident to arrest on Graham's person, and located
7  one (1) thirty-one (31) round magazine, black in color, with no ammunition in Graham's left pocket.
8  The magazine was designed to accept .40 caliber ammunition.

9   OPD units then conducted a probable cause search of the Nissan Sentra for firearms and/or
10  ammunition. They located a .45 caliber, Glock 30, semi-automatic pistol (s/n WZB215) on the
11  floorboard, approximately three inches in front of the driver's seat. The butt of the pistol was sticking out
12  from underneath the seat. It had a round in the chamber and thirteen rounds in the magazine. All of the
13  ammunition bore the head-stamp "CCI, 45 AUTO." Although not reported stolen at the time, follow-up
14  by OPD with the registered owner resulted in the firearm being reported stolen out of Oroville, CA.
15  Later analysis identified Delay Graham as the major contributor to DNA found on the grip of the
16  firearm. The chance that a random person's DNA profile, other than Graham's, would be similarly
17  included was 1 in 50 sextillion.

18   OPD later obtained a search warrant for the residence where Graham was seen earlier in the day
19  (immediately prior to driving to Oakland's Silver & Gold). In the house they seized, among other items:

- One semi-automatic pistol, black in color, .40-caliber, Glock 22, serial number (NMC937), containing one magazine with 15-round capacity fully loaded with .40-caliber rounds. The firearm was located on the box spring underneath the mattress in the only bedroom in the residence. All of the ammunition bore the headstamp "Winchester S&W 40."[1]

- One magazine with approximately three (3) .10-caliber rounds. Officer K. Bui located the ammunition in an Amazon backpack behind a sofa near the side window.

- One BOYT brand 12x8 black gun case containing one silver .10-caliber empty magazine and a 20 qty empty box of ELITE performance Ammunition Box. Officer D. Bruce located the gun case in the bedroom.

---

[1] DNA analysis excluded Graham as a contributor to DNA found on the trigger of this second firearm (S/N NMC937), but could not draw any conclusions about DNA collected from other areas of the firearm due to the low-level nature of the mixtures.

UNITED STATES' SENTENCING MEMORANDUM
CR 16-00538 JSW                              2

- Indicia linking Graham to the bedroom, including: a pair of tan Timberland boots size 6 inside of the bedroom (one of the officers had previously seen a picture of Graham wearing tan Timberland boots); Jordan Craig legacy edition 32/32 jeans inside the bedroom behind the door (one of the officers had previously seen a picture of Graham wearing similar jeans). The jeans and shoes were both the same size worn by Graham.

III.  SENTENCING GUIDELINES CALCLATIONS

The government concurs with the PSR's Guidelines calculation which results in a total combined offense level of 23. The defendant's prior felony and misdemeanor convictions score him eleven (11) criminal history points, resulting in a Criminal History Category (CHC) of VI. The Guidelines range for an offense level of 23 and CHC V is 84-105 months in prison.

IV.  DISCUSSION

A.  Applicable Law

Section 3553(a) directs the district court to consider a number of factors in determining an appropriate sentence. In this case, these factors indicate that a sentence of 84 months in custody would be sufficient, but not greater than necessary, to achieve the goals of sentencing. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The key factors are the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), the need to afford adequate deterrence to criminal conduct, *id.* § 3553(a)(2)(B), the need to protect the public from further crimes of the defendant *id.* § 3553(a)(2)(C), and the need to impose a just punishment, *id.* § 3553(a)(2)(A).

Although the Supreme Court's decision in *Booker* rendered the Sentencing Guidelines advisory, the Guidelines still remain the "starting point and initial bench-mark" for sentencing. *Kimbrough v. United States*, 552 U.S. 85, 108, (2007) (internal quotation marks and citation omitted); *see Carty*, 520 F.3d at 991 (en banc); *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011). While there is no presumption of reasonableness for a Guidelines range sentence, if a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Carty*, 520 F.3d at 991-992 (citing *Gall v. United States*, 552 U.S. 38, 50, (2007)); *see also United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) ("district court must start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the extent of the departure

from the Guidelines sentence."). As the Supreme Court recognized in *Gall*, "a major departure should be supported by a more significant justification than a minor one." 552 U.S. at 50. Finally, "[a]s a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing." *United States v. Armstead*, 552 F.3d 769, 777-78 (9th Cir. 2008); *see, e.g.*, *United States v. Treadwell*, 593 F.3d 990, 1001 (9th Cir. 2010).

### B. Sentencing the Defendant to 84 Months' Imprisonment Would Vindicate the Interests Set Forth in 18 U.S.C. § 3553(a).

The defendant's criminal history spans the better part of the last decade. His criminal history is remarkable not only for its longevity, but also for the frequency and regularity of arrests and convictions. No sentence to date appears to have had any deterrent effect on his conduct. Notably, this is not the defendant's first conviction for an offense involving firearms. (*See* PSR ¶¶ 28-38.)[2] Nor is it the first time he has been a suspect or person of interest in a homicide. In 2010, Graham was arrested by the Oakland Police Department for assault with a firearm. (*Id.* ¶ 36.) In April of 2011, he was arrested for carrying a concealed firearm in a vehicle. (*Id.* ¶ 37.) In September 2011, he was arrested and later convicted of assault with a semi-automatic firearm after he attempted to rob the wrong residence of marijuana plants. (*Id.* ¶ 30.) Two years later, in 2013, Graham was arrested for evading police officers. (*Id.*) The officers attempted to contact Graham because he was a person of interest in several homicide investigations. (*Id.*) Rather than speak with the police, Graham sped away from the officers at a high rate of speed, lost control of his vehicle, and ran off the road. (*Id.*) A month later, Graham was arrested for attempting to run down a police officer with his vehicle. (*Id.* ¶ 31) The officer was forced onto the hood of the car before being flung from the vehicle by Graham's acceleration (in reverse) and sharp turn. (*Id.*) Graham was sentenced to six years in prison for the assault. (*Id.*) He was released in May 2016. (*Id.*) Five months later, in October 2016, he was again involved with firearms and evading police. (*Id.* ¶ 32.) Although Graham escaped capture in October, he was picked up by San Mateo

---

[2] This memorandum does not repeat the detailed facts surrounding the defendant's previous convictions and arrests as described in the PSR. The government notes the serious nature and extended pattern of these offenses, however, and urges the Court to give them careful consideration when evaluating the defendant's criminal history.

authorities and pled guilty after he was arrested in December 2016 for the current offense. (*Id.*) Despite multiple encounters with the criminal justice system from a young age, and opportunities to reform, the defendant's criminal conduct has continued unabated and undeterred by numerous arrests, convictions, and periods of incarceration.

A substantial sentence is now required protect the public and impress upon the defendant the need to refrain from future criminality. Despite multiple approaches to rehabilitation over the last decade, no sentence and no amount of supervision has come close to protecting the community or earning the defendant's respect. Given the defendant's escalating criminal history and his past violent conduct, the government respectfully submits that an 84-month term of imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing.[3]

For the same reasons, the government recommends that the Court impose a three-year term of supervised release with a special search condition as set forth below:

> The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

Given the defendant's persistent criminality and his demonstrated unwillingness and/or inability to comply with the law and court orders, the requested search condition is needed to serve the interests of deterrence and rehabilitation.

## V.     CONCLUSION

In full consideration of the defendant's history and characteristics together with the goals of sentencing, the government respectfully requests that the Court sentence the defendant to a combined 84 months in prison. The government recommends that this term in custody be followed by three years of supervised release, the expanded search condition set forth above, forfeiture of the firearm and

---

[3] The government would recommend a sentence of 84 months regardless of whether the 2-level enhancement for possession of a stolen firearm applies. The defendant's longest prison sentence to date was approximately six years. Imposing a sentence of 84 months would be consistent with an incremental approach to sentencing and would better account for the defendant's conduct and criminal history than a sentence at a lower Guidelines range.

UNITED STATES' SENTENCING MEMORANDUM
CR 16-00538 JSW                                       5

1 | ammunition involved in the offense, and a $100 special assessment.

3 | DATED: May 8, 2018    Respectfully submitted,

ALEX G. TSE
Acting United States Attorney

     /s/
SCOTT D. JOINER
Assistant United States Attorney